UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERNIE G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-3288-MJD-RLY |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Ernie G. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").  See 42 U.S.C. §

1382.  For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.  Preliminary Matter**

On July 7, 2021, the Court issued two decisions in Social Security appeals in which the

claimants were represented by Thomas Newlin, who also represents Claimant in this case.  In

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from
his office as Commissioner of the Social Security Administration on July 9, 2021, Kilolo
Kijakazi automatically became the Defendant in this case when she was named Acting
Commissioner of the Social Security Administration.

each of those decisions, the Court found that any valid arguments the claimant may have had were waived because Mr. Newlin had failed to present them in a cogent, properly supported manner.  *See Charles A. v. Saul*, 2021 WL 2820534, at *3 (S.D. Ind. July 7, 2021) ("Mr. Newlin has done no more than identify issues and state conclusions.  He has not sufficiently developed any argument that would require remand of this case, and therefore he has waived any argument that could have been made."); *James M. v. Saul*, 2021 WL 2820532, at *2 (S.D. Ind. July 7, 2021) ("Mr. Newlin has done no more than identify issues.  He has not sufficiently developed any of those issues, and therefore they are all waived.").

Mr. Newlin filed his opening brief in this case two weeks later, on July 28, 2021.  Unfortunately, that brief also fails to present cogent, properly supported arguments.  As set forth below, however, as to one of the issues raised in the brief, the ALJ's decision is so deficient on its face that remand is required despite Mr. Newlin's own shortcomings.

## II. Background

Claimant applied for SSI in May 2018, alleging an onset of disability as of November 1, 2016.  [Dkt. 15-5 at 2.]  Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Gladys Whitfield ("ALJ") on April 21, 2020.  [Dkt. 15-2 at 28.]   On April 20, 2020, ALJ Whitfield issued her determination that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied Claimant's request for review on October 27, 2020.  *Id.* at 2.  Claimant timely filed his Complaint on December 29, 2020, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## III. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 416.920. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or

substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

## IV. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 1, 2016. [Dkt. 15-2 at 18.] At step two, the ALJ found that Claimant had the severe impairment of disorders of the lumbar spine. *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except never climb ladders, ropes, or scaffolding; occasionally engage in all postural activities; occasional exposure to wetness, and avoid all use of hazardous moving machinery and exposure to unprotected heights.

*Id.*

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id.* at 21. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id.* at 22. Accordingly, the ALJ concluded that Claimant was not disabled. *Id.* at 23.

## V. Discussion

Claimant advances two reasons why he believes remand is required. The first—that the ALJ erred at step three—is easily disposed of. The ALJ determined that Claimant's impairments did not meet or medically equal any of the listed impairments, and specifically considered

Listing 1.04 (Disorders of the Spine), finding that "the record does not support the claimant is unable to ambulate effectively." [Dkt. 15-2 at 19] (citing generally Exhibits 3F and 6F).

Claimant's step 3 argument reads, in its entirety:

> The ALJ erred in evaluating the severity of Plaintiff's lumbar impairment and failed to build a logical bridge between the evidence and her determination that Plaintiff did not meet Listing 1.04. This was the sole basis of the ALJ's determination, and yet the rationale is sparse and lacking in direct citation, citing solely to an MRI showing neural foraminal stenosis with exiting nerve root compression. The ALJ went on to determine that the record showed no support for Plaintiff being unable to ambulate effectively, (NOD, p. 4). In support of this determination, the ALJ simply pointed to Exhibits 3 and 6F, failing to provide any evaluation of these records whatsoever which might provide a logical bridge from this evidence to her determination. Had the ALJ attempted to build this bridge, it would have been clear that each medical visit at 3F noted a limp, as well as decreased strength and range of motion in the lumbar spine and lower extremities, evidence clearly more supportive of limitations in ambulation than not. This issue requires remand for further administrative proceedings to determine to what level Plaintiff's impairments effect his ability to ambulate. Further, throughout these same records, Plaintiff's BMI was consistently over 31, implying a need to evaluate the effects of obesity as well.

[Dkt. 17 at 5-6.] Regardless of any deficiencies in the ALJ's explanation of her step three determination, Claimant is not entitled to remand on this issue unless he is able to point to evidence in the record that would support a finding that he met Listing 1.04. *Sims v. Barnhart,* *309 F.3d 424, 429-30 (7th Cir. 2002).* Claimant wholly fails to acknowledge the relevant definition of "inability to ambulate effectively," which was

> "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." This level of impairment "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities" such as a walker, two crutches, or two canes.

*Kastner v. Astrue*, 697 F.3d 642, 650 (7th Cir. 2012) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b)(2)).[3]  The only evidence pointed to by Claimant demonstrates that he had a limp and decreased strength and range of motion; that evidence is clearly insufficient to demonstrate that Claimant had an "inability to ambulate effectively" as that term was used in the Listing.  Claimant has simply not demonstrated the ALJ's step three determination requires remand.[4]

> Claimant's second argument is, in its entirety:
>
> The ALJ's RFC is not supported.  The determination that Plaintiff can perform light work is clearly flawed on its face, as light work is generally considered to require a significant amount of standing and walking (1/3 to 2/3 of the time). Plaintiff's records are consistent in reporting difficulties with prolonged standing and walking from February of 2017 through his April 2019 surgery.  Following his surgery, Plaintiff has continued to exhibit deficiencies as noted above, with records from January of 2020 showing positive straight leg raise and facet loading bilaterally with reports of continued back pain and difficulty with transitions and prolonged standing.  This evidence (conspicuously absent from the ALJ's evaluation) does not support the determination that Plaintiff is able to perform light work, thereby requiring remand for provision of rationale with specific citing to evidence in support of such.

[Dkt. 17 at 6.]  As noted above, this argument is inadequate and subjects Claimant's argument to waiver.  *See, e.g., Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by

---

[3] The Court notes that the relevant portion of the Listings has been amended since the date of the ALJ's decision.  The current version no longer includes a Listing 1.04 or the term "inability to ambulate effectively."

[4] The Court expresses no opinion whether a successful Listings argument could have been made by Claimant.  However, the Court notes that the step three determination will likely be reevaluated under the amended Listings on remand.  *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 FR 78164-01 (Dec. 3, 2020) ("If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

legal authority.").  To be sure, "[i]t is not this court's responsibility to research and construct the parties' arguments."  *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).  However, the Court cannot, in good conscience, ignore an argument that points to a glaringly obvious deficiency in the ALJ's determination, which is the case here.

Claimant's brief and the ALJ's decision both make clear that the objective medical evidence of record establishes that Claimant has back issues that worsened over time.  As the ALJ notes in her opinion:

- An MRI in January 2017 and an examination in December 2017 led to a diagnosis of "left L2 radiculopathy correlating with a left L2/3 foraminal disc herniation."  [Dkt. 15-2 at 20 (citing Ex. 2F at 11 and 12).]

- An MRI in January 2018 "revealed advanced, chronic degenerative changes to the lumbar spine with mild increase in the size of the left subarticular/foraminal disc protrusion and associated annular fissure at the L1/2 level, and progression of the left subarticular disc extrusion with annular fissure component at the L2/3 level, as well as moderate left foraminal stenosis with contact/impingement of the exiting left L2 nerve root increased since testing results in April 2017."  *Id.* (citing Ex. 2F at 9).  Surgery was recommended; however, Claimant's insurance required that he undergo physical therapy before surgery would be covered.

- In February 2018, Claimant reported that "his back pain was aggravated with prolonged sitting, standing and activity," and Claimant's physical therapist noted "decreased range of motion in his trunk with severe pain at end range and increased pain with 'AP' mobs to L2-L5, transfers and SI provocation."  *Id.* (citing Ex. 1F at 12).

- An MRI in February 2019 "showed multi-factorial spinal canal stenosis at the L2/3, L3/4, and L4/5 levels with severe right L5/S1 and moderate to severe L3/4 and L4/5 neural foraminal stenosis with exiting nerve root compression." *Id.* at 21 (citing Ex. 4F at 2).

Claimant underwent surgery in April 2019 after completing the physical therapy required by his insurance company. As the ALJ notes in her decision,

> [s]ince his surgery, the claimant reported having continued low back pain with resolved left-sided sciatic pain. He had a lapse in treatment due to a loss of insurance. The claimant was noted to have trouble ambulating "any distance" and required a cane. Clinically, the claimant had a limping gait, decreased range of motion in the lumbar spine, positive straight leg raise, positive facet loading bilaterally with tenderness at the L2, L3, L4, and L5 (Ex. 6F at 27).

*Id.*

Other than her summary of the medical evidence, the only other evidence cited by the ALJ in support of her RFC determination are the findings of the State agency consultants, which she finds to be "partially persuasive." *Id.*[5] The ALJ nonetheless concluded as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the claimant's lumbar impairment and the course of his treatment. His clinical findings have remained generally stable and his condition has improved following surgical intervention in April 2019. Although the claimant alleged the use of a cane and a prescription, such was not found in the treating notes and his reported use of a cane was not documented until after his April surgery, and does not appear to have continued. Even so, the claimant reported intermittently working at a level in excess of that set forth in the assigned residual functional capacity. Substantial evidence supports that use of a cane or other assistive device is not medically necessary.

---

[5] The Court notes that those findings were made in July 2018, [Dkt. 15-3 at 11], and accordingly were not made with the benefit of the entire medical record.

*Id.*[6]  The Court is unable to discern how "claimant's lumbar impairment and the course of his treatment" support the ALJ's RFC determination.  In addition, the ALJ recognized that

> once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

*Id.* at 20.  However, the ALJ did not even attempt to explain why she rejected Claimant's testimony that he experiences pain and other subjective symptoms that are wholly inconsistent with the ALJ's RFC determination.  *See* [Dkt. 15-2 at 44-47].[7]  Further, the ALJ's suggestion that the intermittent work Claimant testified about demonstrated that he could work "at a level in excess of that set forth in the assigned [RFC]" simply is not supported by the Claimant's actual testimony.  *See id.* at 34-43 (describing very occasional work for sympathetic friends who "knew my conditions and whatever came available, the kinda type of work they thought I could do, they'd give me an opportunity to do that type of work" for "a couple of hours here, a couple hours there").

---

[6] The Court notes that Claimant testified that his surgery provided temporary relief for the groin pain he was experiencing, but did not provide relief for his lower back pain.  [Dkt. 15-2 at 47.] This testimony is consistent with Claimant's post-surgical reports to his primary care physician. *See, e.g.*, [Dkt. 15-7 at 90, 92].

[7] For example, Claimant testified that he could only stand for an hour and a half at a time and could only sit for an hour or two due to back pain.  [Dkt. 15-2 at 46] ("It's, it's like when I sit down, I have to get back up after a while 'cause I started lockin' up.  And then when I'm standing on my feet for so long, it's, 'cause of, due to pain, you know, hurtin'.  But, then when I sit down, it feels like the pain even gets, it increases, so I have to get back up.").

9

Because the ALJ wholly failed to articulate the basis for her implicit rejection of Claimant's testimony regarding his subjective symptoms, and because that testimony is inconsistent with the ALJ's RFC determination, the ALJ's decision is inadequate on its face. *See* SSR 16-3p, 2017 WL 5180304 (setting forth factors to be considered in evaluating a claimant's subjective symptoms); *see also* 20 C.F.R. § 416.929 (same).[8]  Remand is required to correct this error. *See, e.g.*, *Moon v. Colvin*, 763 F.3d 718, 723 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) (reversing because ALJ's "apparent disbelief" of claimant's testimony about her migraines was "not justified in his decision" and therefore "the ALJ failed to build a logical bridge between substantial evidence and his conclusion"); *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("It is not a court's role to displace an ALJ's judgment by making our own findings about the facts, but we cannot uphold an administrative determination that failed to explain the outcome adequately.") (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)); *Elder v. Astrue*, 529 F.3d 408, 413, 414 (7th Cir. 2008) (credibility determination that "lacks any explanation" is "patently wrong" and "deserving of reversal") (citations and internal quotation marks omitted).

---

[8] In her brief, the Commissioner argues that "[i]t was reasonable for the ALJ to accept [the state agency consultants'] uncontroverted medical opinions over Plaintiff's suggestion that he was disabled" and that "Plaintiff's own assertion that he had greater limitations cannot overcome the substantial evidence [in the form of the consultants' opinions] supporting the ALJ's determination."  [Dkt. 18 at 18.]  This argument ignores the ALJ's obligation to consider a claimant's testimony and other evidence regarding his subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304 (noting that "if an individual alleges impairment-related symptoms, we must evaluate those symptoms using a two-step process set forth in our regulations").

## VI. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND**

**REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  18 JAN 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.